Citation Nr: 1132136 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 07-06 174 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to restoration of a 40 percent evaluation for bilateral hearing loss. 

2. Entitlement to a compensable disability evaluation for bilateral hearing loss. 


REPRESENTATION

Appellant represented by: Vietnam Veterans of America


ATTORNEY FOR THE BOARD

J. T. Sprague, Associate Counsel





INTRODUCTION

The Veteran had active service in the United States Army from October 1950 to January 1952, to include combat duty in Korea. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2006 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. The Board remanded the claims in March and July 2009, and July 2010 for further evidentiary development. Unfortunately, requested development was not conducted as instructed by the Board, and as pointed out by the Veteran's representative, further development is required before a final decision can be entered. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.


REMAND

This case has been before the Board on three separate occasions, and unfortunately, must yet again be remanded for remedial compliance with Board instructions. 

The Veteran in this case was initially awarded a noncompensable evaluation for bilateral hearing loss, with an effective date set to January 1998. Sometime after the initial rating, the Veteran asserted that his hearing loss was increasing in severity, and that he should be entitled to a compensable level of disability evaluation. In a July 2003 rating decision, the disability was increased to a 40 percent rating based on findings of a private audiological examination dated in June 2003. 

Subsequent to this action, the Veteran has had his disability evaluation reduced to a noncompensable level. He asserts that his 40 percent disability evaluation should not only be restored, but that he should be entitled to a rating higher than this, as his hearing has continued to deteriorate. 

This case has a lengthy evidentiary history, and there are multiple audiological examinations of record which, ostensibly, assess the level of the Veteran's hearing loss from 2003 to the present time. There is, however, a great disparity between findings entered by VA audiologists and those performed by the Veteran's private hearing specialists. Of particular note, is a private examination dated in September 2005, which had the following puretone hearing thresholds in decibels: 





HERTZ



Average
1000
2000
3000
4000
RIGHT
86
55
75
105
110
LEFT
90
65
85
100
110

The Maryland CNC was utilized for the test, and speech recognition revealed 88 percent discrimination in the right ear and 92 percent in the left ear. By regulation, this is an "exceptional" pattern of hearing loss. See 38 C.F.R. § 4.86. 

VA examinations proximate in time to this examination, and dated later than this examination in 2007 and 2009, do not reveal such an exceptional pattern. An additional private examination, dated in August 2009, also shows a severe degree of hearing loss; however, the findings are not as severe as those noted in the September 2005 private report (but are much worse than VA findings). It appears that Maryland CNC, the required regulatory standard for audiometric testing, was utilized in both private and VA examinations. 

In the Board's remand order of July 2010, the Veteran was to be afforded a new VA examination, and an opinion was to be entered which considered the factors established in the U.S. Court of Appeals for Veterans Claims (Court) decision of Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007). This was mandated in an earlier 2009 remand, and it had not been accomplished as directed. Additionally, the Board reviewed the extensive evidentiary record of hearing testing, and determined that there was a large disparity between the private examinations of record, to include those afforded in June 2003, September 2005, and August 2009, and the VA examinations in the claims file. It was directed that an audiologist examine the claims file, and offer an opinion as to why such an extensive disparity existed. 

In response to the Board's directives, a VA examination was afforded in August 2010; however, that examination did not contain an opinion addressing the disparity between previous private and VA examinations. Furthermore, there was no opinion as to functional impairment included in that report-and as had been requested on two separate occasions by the Board. A September 2010 addendum contained a paragraph addressing the potential impact the Veteran's hearing loss has on his usual occupation as an optometrist, with no other functional limitations discussed. Most significantly, a January 2011 addendum purported to address the disparity between very severe private findings and less severe VA audiology reports. Unfortunately, the January 2011 addendum is based off of an incorrect reading of the evidentiary record. That is, the audiologist noted that the basis of the 40 percent award was a June 2003 VA examination report, and that a transposition error by the RO in the body of the rating decision caused the unnecessary rating of 40 percent (the examiner notes that the June 27, 2003, VA examination report contains much less severe findings than what is reported in the rating decision). The rating decision was based on findings obtained in a June 11, 2003, private examination report, which indeed shows much more severe hearing loss than what is reported in the VA examination report of several days later. The rating decision correctly transcribed the June 11, 2003, findings in its award of a 40 percent rating. Thus, the entire premise for the VA audiologist's explanation is factually incorrect. Remedial action is necessary. 

A remand by the Board confers upon the Veteran, as a matter of law, the right to compliance with the remand instructions, and imposes upon the VA a concomitant duty to ensure compliance with the terms of the remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998). The VA examiner was instructed to opine as to the disparity between the results of private examinations and VA examinations, and the returned opinion is based on an incorrect reading of the factual history. As of yet, there has been no factually-based medical explanation of the disparity, and furthermore, the functional impact of hearing loss has been related to employment only. As such, the Veteran's claims file should be send to a different audiologist so that a remedial addendum opinion, addressing both the discussed disparity and all functional limitations of hearing loss, can be afforded. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). Expedited handling is requested.)

1. Contact an audiologist, other than the one who conducted the most recent VA examination (and authored the associated problematic addendum opinions), for the purposes of obtaining a VA audiological opinion. In this regard, the examiner is specifically requested to provide an opinion regarding all the functional effects of hearing loss (i.e. including, but not exclusively employment interference) based on VA examination report/private examination report findings. Additionally, after reviewing the claims file, the examiner should give an opinion as to why there is such a vast disparity between private audiology examinations, specifically those conducted in 2003, 2005 and 2009, and the VA examinations of record. The examiner should indicate if testing protocols appear to have been followed on all tests of record. A detailed rationale should be included. 

2. After the development requested above has been completed to the extent possible, re-adjudicate the Veteran's claims. If the resolution remains less than fully favorable, the Veteran should be furnished a supplemental statement of the case and given the opportunity to respond prior to dispatch to the Board for final adjudication.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



_________________________________________________
James L. March 
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2010).